Michael D. Greear
Wyoming Bar # 6-2776
Worrall & Greear, P.C.
237 Storey Boulevard, Ste. 110
Cheyenne, WY 82009
(307) 426-4105
(307) 426-4099 (FAX)
Attorneys for Wells Fargo Bank, N.A.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| WELLS FARGO BANK. N.A., a national bank, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 12-CV-221-J |
| NORTHERN ROCKIES NEURO-SPINE, P.C., a Wyoming corporation, JOHN H. SCHNEIDER, MICHELLE SCHNEIDER, SCHNEIDER LIMITED PARTNERSHIP, a Wyoming limited partnership, JOHN SCHNEIDER REVOCABLE TRUST U/A/D NOVEMBER 20, 2007, MICHELLE SCHNEIDER REVOCABLE TRUST U/A/D NOVEMBER 20, 2007, SCHNEIDER MANAGEMENT, LLC, a Wyoming limited liability company, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## ANSWER TO COMPLAINT

COMES NOW Defendants, Northern Rockies Neuro-Spine, P.C., John H. Schneider, Michelle Schneider, Schneider Limited Partnership, John Schneider Revocable Trust U/A/D November 20, 2007, Michelle Schneider Revocable Trust U/A/D November 20, 2007, and Schneider Management, LLC, by and through undersigned counsel, Michael D. Greear of Worrall & Greear, P.C., and for their answer to the Complaint brought by Plaintiff state as follows:

ALLEGATIONS AS TO ALL CLAIMS

1. Defendants admit the allegations contained in the first sentence of paragraph 1 of the Complaint. Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations contained in the second sentence of paragraph 1 of the Complaint; therefore, the same are denied.

2. Defendants admit the allegations contained in paragraph 2 of the Complaint.

3. Defendants deny the allegations contained in paragraph 3 of the Complaint.

4. Defendants deny the allegations contained in paragraph 4 of the Complaint.

5. Defendants admit the allegations contained in paragraph 5 of the Complaint.

6. Defendants admit the allegations contained in paragraph 6 of the Complaint.

7. Defendants admit the allegations contained in paragraph 7 of the Complaint.

8. Defendants admit the allegations contained in paragraph 8 of the Complaint.

JURISDICTION AND VENUE

9. Defendants admit the allegations contained in paragraph 9 of the Complaint.

10. With regard to the allegations contained in paragraph 10 of the Complaint, Defendants deny the allegation that venue is proper under 28 U.S.C. § 1391(a)(1) or that all Defendants are residents of Wyoming; but Defendants admit the remainder of the allegations contained in paragraph 10 of the Complaint and admit that venue is proper in this Court.

## FIRST CLAIM FOR RELIEF
(Money Judgment on Note)

11. Defendants incorporate the answers set forth above responding to paragraphs 1 through 10 of the Complaint

12. Defendants admit the allegations contained in paragraph 12 of the Complaint.

13. The allegations contained in paragraph 13 of the Complaint set forth conclusions of law; thus, a response is not required.

14. Defendants admit the allegations contained in paragraph 14 of the Complaint.

15. The allegations contained in paragraph 15 of the Complaint set forth conclusions of law; thus, a response is not required.

16. Defendants admit the allegation contained in paragraph 16 of the Complaint that the unpaid balance on the Note is $559,486.96 in principal; but the remainder of the allegations contained in paragraph 16 of the Complaint are dependent upon a conclusion of law, i.e., whether or not the Note is in default, and as such, those allegations do not require a response.

17. With respect to the allegations contained in paragraph 17 of the Complaint, Defendants assert that the document referred to therein speaks for itself, and the allegations contained in said paragraph 17 of the Complaint set forth a legal conclusion and thus do not require a response.

18. The allegations contained in paragraph 18 of the Complaint set forth conclusions of law; thus, a response is not required.

### SECOND CLAIM FOR RELIEF
(Money Judgment on NRNS Commercial Guaranty Agreements)

19. Defendants incorporate the answers set forth above responding to paragraphs 1 through 18 of the Complaint.

20. Defendants admit the allegations contained in paragraph 20 of the Complaint.

21. Defendants admit the allegation in the first sentence of paragraph 21 of the Complaint to the extent it avers NRNS failed to pay the Note balance. The remainder of allegations contained in paragraph 21 of the Complaint set forth conclusions of law or are ultimate facts premised on conclusions of law; thus, no further response is required.

22. With respect to the allegations contained in paragraph 22 of the Complaint, Defendants assert that the documents referred to therein speak for themselves, and the allegations contained in said paragraph 22 of the Complaint set forth legal conclusions and thus do not require a response.

23. Defendants admit the allegations contained in paragraph 23 of the Complaint.

24. The allegations contained in paragraph 24 of the Complaint set forth conclusions of law; thus, a response is not required.

25. Defendants admit the allegation contained in paragraph 25 of the Complaint that the unpaid balance on the Note is $559,486.96 in principal; but the remainder of the allegations contained in paragraph 25 of the Complaint are dependent upon a conclusion of law, i.e., whether or not the Note is in default, and as such, those allegations do not require a response.

26. With respect to the allegations contained in paragraph 26 of the Complaint, Defendants assert that the documents referred to therein speak for themselves, and the allegations contained in said paragraph 26 of the Complaint set forth legal conclusions and thus do not require a response.

27. With respect to the allegations contained in paragraph 27 of the Complaint, the same set forth legal conclusions; thus, no response is required.

28. Defendants deny any allegation contained in the Complaint that is not expressly admitted in this Answer.

## AFFIRMATIVE DEFENSES

1. Plaintiff's second claim for relief, and all separate claims brought thereunder, are barred by failure of consideration.

2. Plaintiff's claims, as set forth in its first claim for relief and second claim for relief, are barred by duress.

3. Plaintiff's claims, as set forth in its first claim for relief and second claim for relief, are barred by estoppel.

4. Plaintiff's claims, as set forth in its first claim for relief and second claim for relief, are barred by fraud.

5. Plaintiff's claims, as set forth in its first claim for relief and second claim for relief, are barred by waiver.

6. Plaintiff's claims, as set forth in its first claim for relief and second claim for relief, are barred by laches.

## COUNTERCLAIM

COME NOW Defendants, Northern Rockies Neuro-Spine, P.C., John H. Schneider, Michelle Schneider, Schneider Limited Partnership, John Schneider Revocable Trust U/A/D November 20, 2007, Michelle Schneider Revocable Trust U/A/D November 20, 2007, and Schneider Management, LLC, by and through undersigned counsel, and for their counterclaim against Plaintiff, Wells Fargo N.A., state the following:

## JURISDICTION

1. Defendant, Northern Rockies Neuro-Spine, P.C., ("Northern Rockies"), is a corporation lawfully existing and organized under the laws of the State of Wyoming and has its principal place of business in Montana.

2. Defendant, John H. Schneider, ("Dr. Schneider"), is a resident of the State of Montana.

3. Defendant, Michelle Schneider, ("Mrs. Schneider") is a resident of the State of Montana.

4. Schneider Limited Partnership ("Schneider LP") is a Wyoming limited partnership lawfully existing and organized under the laws of the State of Wyoming and with its principal place of business in Wyoming.

5. John Schneider Revocable Trust U/A/D November 20, 2007, ("Dr. Schneider's Trust"), is a trust, the situs of which is Wyoming, administered by a trustee who is a resident of Montana.

6. Michelle Schneider Revocable Trust U/A/D November 20, 2007, ("Mrs. Schneider's Trust"), is a trust, the situs of which is Wyoming, administered by a trustee who is a resident of Montana.

7. Schneider Management, LLC, ("Schneider Management"), is a Wyoming limited liability company lawfully existing and organized under the laws of the State of Wyoming and with its principal place of business in Wyoming.

8. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(a) due to diversity of citizenship, and the amount in controversy, exclusive of interest and costs, exceeds $75,000, and further, this Court has ancillary jurisdiction over the claims set forth herein due to their relation to the claims for relief set forth in Plaintiff's Complaint.

9. Venue is proper in this Court pursuant to pursuant to 28 U.S.C. § 1391(a)(2) and (a)(3) as some Defendants are residents of the State of Wyoming, some of the Defendants are subject to this Court's personal jurisdiction with respect to this action, and a substantial

part of the events or omissions giving rise to the claims herein occurred in the State of Wyoming.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

10. In August of the year 2005, Northern Rockies, together with another entity owned and controlled by Dr. Schneider, opened accounts with Shoshone Bank in Cody, Wyoming (predecessor of Plaintiff bank) and began working directly with a Glenn Ross who was then vice-president of said Shoshone Bank.

11. In the year 2009, the Defendants withdrew funds from accounts with other institutions to deposit with Wells Fargo. This was a result of being courted by Wells Fargo's Wealth Management Group.

12. Wells Fargo's Wealth Management Group charged Defendants fees of approximately $25,000 to $30,000 per year despite insignificant return on investment.

13. Despite the insignificant return on investment and due to the courting of Wells Fargo, Defendants continued to make high contributions to the Wealth Management Group account at Wells Fargo.

14. The Schneiders, through various personal accounts and accounts of entities they owned and/or controlled, established over $9,000,000.00 deposited with Wells Fargo.

15. As inducement to deposit such large sums of money with Wells Fargo, Glenn Ross made verbal guarantees to Dr. Schneider, as an individual and as an agent of the various other

Defendants, that both a high return on investment and the lowest favorable loan rates would be available between the years 2005 and 2011.

16. Dr. Schneider, and the various other Defendants through Dr. Schneider, were courted for multiple loans, lines of credit by Wealth Management partners, and fees for Wells Fargo consultants from the year 2009 through January of the year 2012.

17. Wells Fargo courted Dr. Schneider for a $5,000,000.00 loan/line of credit secured by Northern Rockies accounts receivable from May of 2011 through January of 2012.

18. Dr. Schneider was aggressively courted during the funding states of the OMNI project.

19. Glenn Ross accompanied loan managers requested attending discussions for OMNI project. Mr. Ross, as a representative of Wells Fargo, was the only banker allowed to present at development meetings with Meridian in March of the year 2010.

20. Dr. Schneider pushed ONI Realty Investors, LLC properties to only work with Wells Fargo despite better loan rates (as Meridian found when they went to Western security to fund the Ambulatory Surgical Center tenant improvement loan (the "TI loan")).

21. At the request of Glen Ross, Dr. Schneider solicited all investors to go through Wells Fargo.

22. ONI Realty Investors, LLC agreed to go with Wells Fargo for the building loan – original construction loan of $3,700,000.00 to ONI Realty Investors, LLC; the said note having a date of October 28, 2010.

23. Wells Fargo turned the ONI Realty Investors, LLC building construction loan into a fully amortized loan in the month of April of 2012. The said loan was granted at 5.6% interest, amortized until May 13, 2032 but maturing on May 13, 2022.

24. Glenn Ross offered the TI loan as a construction loan in June of 2011 with a one year maturity, but then verbally guaranteed a low rate with a longer term conversion at the end of the construction phase, contemporaneous with the entire building that has loan with Wells Fargo (due to Mr. Ross's assurances, Dr. Schneider pushed to use the Cody, Wyoming branch even though the building project is in Billings, Montana).

25. Glenn Ross, as of April of 2012, verbally guaranteed Dr. Schneider a longer term ten year loan on the tenant improvements amount even though Dr. Schneider requested a ten year loan in the beginning of the construction loan project, not knowing what cash flow would be. This deceptive practice resulted in an interest-only construction loan with higher conversion rate in June of 2011.

26. At the 11th hour, Wells Fargo refused to convert the TI loan. Dr. Schneider, through legal counsel, made good faith offers to repay the loan, with a sizeable lump sum up-front and with equal monthly installments to repay the loan in 12 months, and with the accounts receivable and accounts with other financial institutions pledged as collateral.

27. Wells Fargo would not agree to the reasonable offers of Dr. Schneider, and this suit was filed.

28. Dr. Schneider continued to maintain funds deposited with Wells Fargo, only moving monies in Northern Rockies Insurance Group, John H. Schneider, M.D., accounts

receivable accounts, Schneider LP and personal checking (approximately $5,000,000.00) out of Wells Fargo after they refused to refinance the loan despite the fact that Dr. Schneider has an active practice in Wyoming and Montana.

29. The call of the note has materially damaged Defendants from engaging in further business, obtaining working capital and loans from other institutions to cover the debt. Conversations with other banks have been unproductive due to the actions taken by Wells Fargo.

FIRST CLAIM FOR RELIEF

BREACH OF CONTRACT

30. Defendants incorporate the allegations contained in paragraphs 1 through 29 of this Counterclaim.

31. Wells Fargo made a promise to convert the TI loan to a low rate, long term loan at the end of the construction phase or within the one-year term of the TI loan prior to maturity. This would be done contemporaneously with the other construction loan with Wells Fargo.

32. The promise made by Wells Fargo was conditioned on Dr. Schneider's promise to secure financing of the construction loan through Wells Fargo.

33. Dr. Schneider performed his end of the bargain; i.e., he secured financing of the construction loan through Wells Fargo.

34. Wells Fargo failed to perform its agreement to convert the TI loan within one year or contemporaneously with the conversion of the construction loan.

35. The breach of contract by Wells Fargo resulted in monetary damages to Dr. Schneider, the amount of which will be proved at trial.

SECOND CLAIM FOR RELIEF

BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

36. Defendants incorporate the allegations contained in paragraphs 1 through 35 of this Counterclaim.

37. Throughout the various transactions conducted between Wells Fargo and Defendants, there was an agreed common purpose which included the long term financing of the TI loan.

38. Wells Fargo owed a duty of faithfulness to the common purpose consistent with the justified expectation of Defendants in carrying out the various transactions.

39. Wells Fargo has evaded the spirit of the bargain, and has rendered imperfect performance, and has willfully interfered with the spirit of the bargain and failed to cooperate with Defendants' performance.

40. Wells Fargo owes to Defendants damages for its breach of the implied covenant of good faith and fair dealing in an amount to be proved at trial.

## THIRD CLAIM FOR RELIEF

## PROMISSORY ESTOPPEL

41. Defendants incorporate the allegations contained in paragraphs 1 through 40 of this Counterclaim.

42. Wells Fargo made a clear and definite promise to Dr. Schneider that Wells Fargo would convert the TI loan within its one year term prior to maturity.

43. Wells Fargo should have reasonably expected its promise to Dr. Schneider to induce action by Dr. Schneider.

44. Dr. Schneider did take action in reliance on the promise made by Wells Fargo in that Dr. Schneider took steps to secure financing of various projects through Wells Fargo.

45. Wells Fargo's failure to abide by its promise has resulted in an injustice that can only be avoided if this Court enforces the promise made by Wells Fargo.

## FOURTH CLAIM FOR RELIEF

## EQUITABLE ESTOPPEL

46. Defendants incorporate the allegations contained in paragraphs 1 through 45 of this Counterclaim.

47. Wells Fargo, through its conduct, has caused Dr. Schneider and the various Defendants to change their position for the worse.

48. Said conduct of Wells Fargo includes acts, omissions, and concealments, and specifically includes, but is not limited to, the statements by Wells Fargo that the TI loan would be converted to a low rate, long term loan within the one-year term of the TI loan.

49. Wells Fargo engaged in said conduct either intentionally or with culpable negligence.

50. Defendants, in good faith and without knowledge of the true facts as they would later develop, relied upon the conduct of Wells Fargo to believe that certain facts exist; i.e., that the TI loan would be converted to a long term, low interest loan within the one-year term of the TI loan.

51. The conduct of Wells Fargo led to a change of Defendants' position for the worse.

52. This court should enforce the promise of Wells Fargo to convert the TI loan to a long term, low interest loan.

FIFTH CLAIM FOR RELIEF

NEGLIGENT MISREPRESENTATION

53. Defendants incorporate the allegations contained in paragraphs 1 through 52 of this Counterclaim.

54. Wells Fargo, in the course of its business, supplied false information to Defendants in guidance of their business transactions. To wit, Wells Fargo informed Defendants that the TI loan would be converted to a long term, low interest loan within its one-year term.

55. Wells Fargo failed to use reasonable care and/or competence in supplying Defendants with information that was ultimately revealed to be false.

56. Defendants justifiably relied upon the false information supplied by Wells Fargo.

57. Wells Fargo owes damages to Defendants in an amount to be proved at trial for its negligent misrepresentation.

## SIXTH CLAIM FOR RELIEF

## FRAUD IN THE INDUCEMENT

58. Defendants incorporate the allegations contained in paragraphs 1 through 57 of this Counterclaim.

59. Wells Fargo made false statements to Defendants. Said false statements include the representation that the TI loan would be converted to a long term, low interest loan within its one-year term.

60. The false statements made by Wells Fargo were made with the intention of inducing action on the part of the Defendants; to wit, induce Defendants to engage in various transactions with Wells Fargo.

61. Defendants reasonably believed the false statements made by Wells Fargo to be true.

62. Defendants relied upon the false statements made by Wells Fargo by engaging in further transactions with Wells Fargo.

63. The reasonable reliance by Defendants has resulted in damages in an amount to be proved at trial.

WHEREFORE, Defendants pray Plaintiff take nothing by way of its complaint, and request this Court enter judgment in favor of Defendants in an amount to be proved at trial under any or all of the claims for relief set forth in Defendants' Counterclaim, for reasonable attorneys fees, and for such other and further relief as this Court deems meet and proper in the premises.

**DATED** this 24th day of October 2012.

**WORRALL & GREEAR, P.C.**

By:_____/s/_____
Michael D. Greear, WSB #6-2776
P.O. Box 552
Worland, WY  82401
Voice: (307) 347-9801
Fax: (307) 347-2859
mgreear@rtconnect.net

**CERTIFICATE OF SERVICE**

I hereby certify that on October 24, 2012, I filed the foregoing electronically through the CM/ECF system or by mailing a true and correct copy by United States mail, postage prepaid and addressed as follows:

James R. Belcher
Belcher & Boomgaarden LLP
237 Storey Boulevard, Ste. 110
Cheyenne, WY 82009

_____/s/_____
Michael D. Greear