James R. Belcher
Wyoming Bar # 5-2556
Crowley Fleck PLLP
237 Storey Boulevard, Ste. 110
Cheyenne, WY 82009
(307) 426-4105
(307) 426-4099 (FAX)
Attorneys for Wells Fargo Bank, N.A.
CM/ECF Registered

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| WELLS FARGO BANK. N.A.,<br>a national bank, | ) )<br>) | |
| Plaintiff, | ) )<br>) | |
| v. | ) )<br>) | Case No. 12-CV-221-J |
| NORTHERN ROCKIES NEURO-<br>SPINE, P.C., a Wyoming corporation,<br>JOHN H. SCHNEIDER, MICHELLE<br>SCHNEIDER, SCHNEIDER LIMITED<br>PARTNERSHIP, a Wyoming limited<br>partnership, JOHN SCHNEIDER<br>REVOCABLE TRUST U/A/D<br>NOVEMBER 20, 2007, MICHELLE<br>SCHNEIDER REVOCABLE TRUST<br>U/A/D NOVEMBER 20, 2007,<br>SCHNEIDER MANAGEMENT, LLC,<br>a Wyoming limited liability company, | ) )<br>) )<br>) )<br>) )<br>) )<br>) )<br>) ) | |
| Defendants. | ) | |

## AFFIDAVIT OF GLENN ROSS IN SUPPORT OF WELLS FARGO BANK'S MOTION FOR SUMMARY JUDGMENT

I, Glenn Ross, being first duly sworn on my oath depose and say:

    1.     I am a resident of the State of Wyoming.

    2.     I am the Business Banking Manager and Market President of Wells Fargo Bank, N.A. ("Wells Fargo") in Cody, Wyoming.  Wells Fargo is successor by consolidation with Shoshone First Bank.

    3.     I was an officer of Shoshone First Bank in Cody, Wyoming before Wells Fargo became successor to Shoshone First Bank in 2008.

    4.     I am an adult of sound mind.  The statements contained in this Affidavit are based on my personal knowledge and experience and my review of Wells Fargo's books and records kept in the ordinary course of Wells Fargo's business.

    5.     I am submitting my Affidavit in support of a motion for summary judgment filed by Wells Fargo in the above-captioned matter.

    6.     Attached hereto marked **Deposition Exhibit 3** is a true and correct copy of a Promissory Note dated May 23, 2011, in the original principal amount of $850,000.00 (the "TI Note"), executed and delivered to Wells Fargo by Northern Rockies Neuro-Spine, P.C. ("NRNS").  Wells Fargo holds the TI Note and has not assigned the TI Note to another party.

    7.     Attached hereto marked **Deposition Exhibits 1, 2, 4 and 5** are true and correct copies of Commercial Guaranty agreements dated May 23, 2011, executed and delivered to Wells Fargo by Michelle Schneider ("Mrs. Schneider"), the Michelle Schneider Revocable Trust dated November 20, 2007,  John H. Schneider ("Dr. Schneider") and the John Schneider Revocable Trust dated November 20, 2007.

    8.     Attached hereto marked **WFB MSJ Exhibits A and B** are true and correct copies of Commercial Guaranty agreements dated May 23, 2011, executed and delivered to Wells Fargo by Schneider Limited Partnership  and Schneider Management, LLC.

    9.     Wells Fargo obtained the Commercial Guaranty agreements referred to in paragraphs 7 and 8 above at the time the TI Note was executed and delivered to Wells Fargo.

10.    Attached hereto marked **WFB MSJ Exhibit C** is a true and correct loan advance and payment history for the TI Note.

11.    I have calculated the unpaid balance owing on Note as of October 9, 2013 as follows:

|   |   |   |
|---|---|---|
| a. | Principal | $559,486.96 |
| b. | Accrued interest as of 10/9/2013 | $58,994.79 |
| c. | Total | $618,481.75 |

Interest accrues at the annual rate of 8.50% ($132.10/day) on the unpaid TI Loan balance.

12.    Dr. Schneider and NRNS established a banking relationship with Shoshone First Bank dating back to 2005-2006. I was the primary banking contact for Dr. Schneider.

13.    Dr. Schneider became interested in constructing and developing a surgery center and physician office complex (the "OMNI Project") in Billings, Montana. Dr. Schneider discussed with me the possibility of Wells Fargo financing the OMNI Project after Wells Fargo consolidated in 2008 with Shoshone First Bank. The OMNI Project developers raised equity capital and obtained architectural drawings and construction estimates which took a year or so to complete. Wells Fargo agreed to make a $3,750,000.00 loan for the OMNI Project as evidenced by a Promissory Note dated October 28, 2010. A true and correct copy of the OMNI Project Note (the "OMNI Project Note") is attached to my Affidavit as **WFB MSJ Exhibit D**.

14.    Dr. Schneider discussed with me the possibility of NRNS needing a loan to construct tenant improvements for NRNS's office suite in the OMNI Project (the "TI Loan"). At the time that discussion took place, Dr. Schneider did not know how much money NRNS needed to borrow for tenant improvements. He did ask that the TI Loan be structured as a long-term

3

loan.  Although tenant improvement loans are somewhat rare, it is not uncommon to convert a loan like the TI Loan into a long-term loan once construction is complete.  I thought in the case of NRNS that the TI Loan would be converted from a short term construction loan to a long term loan after construction of tenant improvements was complete.

15.     Dr. Schneider did not provide Wells Fargo with the final estimate for the cost of the tenant improvements until sometime prior to April 19, 2011 when I received a copy of an email from Dr. Schneider to Derek Moore of Wells Fargo.  I have attached to this Affidavit a true and correct copy of that email, labeled **WFB SJM Exhibit E**.

16.     Derek Moore left the employment of Wells Fargo in May of 2011.  I then took primary responsibility for seeing that the loan application for the TI Loan was processed and approved.  By email dated May 9, 2011, Dr. Schneider advised Wells Fargo that NRNS requested $850,000.00 for the TI Loan.  I have attached to this Affidavit a true and correct copy of that May 9 email, labeled **WFB SJM Exhibit F**.

17.     Wells Fargo then approved the TI Loan in that amount. Wells Fargo identified a number of repayment sources for the TI Loan.  Our analysis of the ability of Dr. Schneider to generate large amounts of cash with which to pay loans indicated that NRNS or he could possibly pay the TI Loan in full at the TI Note maturity.  We also thought that the TI Loan could be restructured into a term loan.  I have attached to this Affidavit a true and correct copy of Wells Fargo's Credit Approval Presentation (with private financial and banking information redacted to preserve its confidentiality) that shows the TI Loan was approved with those repayment sources

4

identified. (See **Depo Exhibit 14**, p. 3 "Purpose of Request (Use of Proceeds)", p. 4 "Repayment Sources").

18. After the TI Loan was closed and the Note delivered, Wells Fargo made loan advances on the TI Loan in the amounts shown on **WFB MSJ Exhibit C** as funds were needed to pay the cost of constructing tenant improvements.

19. After the TI Loan closed, Dr. Schneider asked Wells Fargo for a number of additional loans, some of which included restructuring or combining the TI Loan balance with other loans. The various loan requests were made by email messages from Dr. Schneider to me, true and correct copies are attached to this Affidavit, and are summarized below.

    a. In September 2011, Dr. Schneider asked Wells Fargo to make a $5,000,000 term loan to NRNS, part of which would be used to repay the TI Loan. **[WFB MSJ Exhibit G]**. When Wells Fargo was unable to promptly commit to make the loan, Dr. Schneider sent me an email in which he stated: "It is apparent that the complex nature of my personal and professional business structures … is too foreign for local financial institutions." **[WFB MSJ Exhibit H]**. On December 3, 2011, Wells Fargo approved the $5,000,000 loan request, but Dr. Schneider decided not to pursue the approved loan, stating that "Biles and I are going to war and he named me in a lawsuit…" **[WFB MSJ Exhibit I]**.

    b. In March 2012, Dr. Schneider asked Wells Fargo to make another loan to NRNS, with the loan proceeds to be used to pay the TI Loan and to pay NRNS's lease payments

for its office suite in the OMNI Project, payable over a 24 month term. [**Depo Exhibit 15**]. Dr. Schneider then changed his request, asking for a 36 month repayment term. [**WFB MSJ Exhibit J**].

c.     Several weeks later, Dr. Schneider changed his loan request and asked Wells Fargo to loan NRNS $3,000,000 to be secured by bank deposits owned by Northern Rockies Insurance Group, not by deposits owned by NRNS. He stated in his email: "I cannot show that the 3 million is assigned elsewhere, so ... I would want to keep this confidential." [**Depo Exhibit 9**].

d.     Wells Fargo never funded any of the requested loans to NRNS other than the original TI Loan.

20.     On May 1, 2012, Wells Fargo began the formal process to approve converting the TI Loan to a long term loan before it matured on June 15, 2012. Wells Fargo asked NRNS and the TI Loan guarantors for financial information to start the process. In response, Dr. Schneider asked Wells Fargo to convert the TI Loan to a five year, fixed rate loan. [**Depo Exhibit 16**].

21.     Beginning a few days later, a series of newspaper articles were published in which Dr. and Mrs. Schneider were accused of improperly instructing a witness in the Dr. Jimmie Biles litigation to lie in exchange for a payment. Dr. Schneider was also accused of providing the witness with a note for the witness's personal doctor to sign to excuse her from answering deposition questions. [**Depo Exhibit 8**]. On May 9, 2012, Dr. Schneider instructed Wells Fargo to withdraw $2,500,000.00 from his bank accounts without telling Wells Fargo why he was

withdrawing the money.  [**WFB MSJ Exhibit K**].  Dr. Schneider never contacted me to discuss any of the allegations the newspaper articles stated his lawyers reported to the judge in the Biles lawsuit.

22.    I was very concerned about the newspaper reports of the Schneiders' alleged actions and concluded that the Schneiders had paid the $2,500,000 to Dr. Biles to settle the Biles lawsuit.  I was also concerned how the negative publicity would impact Dr. Schneider's medical practice and NRNS's ability to pay the TI Loan.  When this information was circulated to the Wells Fargo loan approval group, Wells Fargo decided not to convert the TI Loan to a long term loan.  Instead, I sent a letter to Dr. Schneider and NRNS in which I advised them that the TI Loan was due and payable in full on the June 15, 2012 Note maturity date.  [**Depo Exhibit 6**].  When the TI Loan was not paid, Wells Fargo filed suit against NRNS and all of the TI Loan guarantors.

STATE OF WYOMING          )
                                            )ss.
COUNTY OF PARK            )

The statements contained in this Affidavit are true and correct to the best of my knowledge and belief.

_Glenn Ross_
Glenn Ross

Signed and sworn to (or affirmed) before me this ___9___ day of October, 2013 by Glenn Ross.

(Seal, if any)

> HOLLY S. MOEN    Notary Public
> County of        State of
> Park             Wyoming
> My Commission Expires 09-30-2014

_Holly E. Moen_
Signature of notarial officer
BUSINESS ASSOCIATE
Title of notarial officer

My commission expires: _Sept 30, 2014_

7