Michael D. Greear
Wyoming Bar # 6-2776
Worrall & Greear, P.C.
P.O. Box 552
Worland, WY 82401
(307) 347-9801
(307) 347-2859
Attorneys for Defendants


## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| WELLS FARGO BANK. N.A., | ) | |
| a national bank, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-CV-221-J |
| | ) | |
| NORTHERN ROCKIES NEURO- | ) | |
| SPINE, P.C., a Wyoming corporation, | ) | |
| JOHN H. SCHNEIDER, MICHELLE | ) | |
| SCHNEIDER, SCHNEIDER LIMITED | ) | |
| PARTNERSHIP, a Wyoming limited | ) | |
| partnership, JOHN SCHNEIDER | ) | |
| REVOCABLE TRUST U/A/D | ) | |
| NOVEMBER 20, 2007, MICHELLE | ) | |
| SCHNEIDER REVOCABLE TRUST | ) | |
| U/A/D NOVEMBER 20, 2007, | ) | |
| SCHNEIDER MANAGEMENT, LLC, | ) | |
| a Wyoming limited liability company, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' BRIEF IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COME NOW Defendants, Northern Rockies Neuro-Spine, P.C., John H. Schneider, Michelle Schneider, Schneider Limited Partnership, John Schneider Revocable Trust U/A/D November 20, 2007, Michelle Schneider Revocable Trust U/A/D November 20, 2007, and Schneider Management, LLC, by and through undersigned counsel, and submit this DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT.

## UNDISPUTED FACTS

Defendants do not dispute the following facts, which comport with those described by Wells Fargo and supported by evidence of record as detailed in the brief of Plaintiff's:

1. Wells Fargo Bank, N.A., ("Wells Fargo") made a loan (the "TI Loan") to Northern Rockies Neuro-Spine, P.C. ("NRNS") to fund construction costs for tenant improvements in an office suite in a new surgery center-office complex.

2. The TI Loan is evidenced by a promissory note dated May 23, 2011. The promissory note has a maturity date of June 15, 2012.

3. Dr. John Schneider; his wife Michelle Schneider; their respective revocable trusts; Schneider Limited Partnership, a Wyoming partnership;

and Schneider Management, LLC, a Wyoming limited liability company, all signed commercial guarantys.

4. Prior to this litigation, Wells Fargo had a banking relationship extending back to 2005 or 2006 with NRNS and Dr. Schneider.

5. Glenn Ross was the primary banker for NRNS and Dr. Schneider.

6. Dr. Schneider, together with other doctors, became interested in constructing and developing a surgery center and physician office complex in Billings, Montana (the "OMNI Project").

7. In early 2009, Dr. Schneider began discussing with Mr. Ross the possibility of Wells Fargo financing the OMNI Project.

8. After equity capital had been raised for the OMNI Project, the investors created architectural drawings and construction estimates, at which time Wells Fargo agreed to make a $3,750,000 loan for the OMNI Project as evidenced by a promissory note dated October 28, 2010 (the "OMNI Project Note").

9. The OMNI Project Note requires monthly payments of interest only through a May 15, 2012 conversion date. At that time, the loan automatically converted from a construction loan to a long-term loan,

requiring monthly payments to fully amortize the unpaid loan balance over a 20 year term.

10. At the time of early discussions regarding the TI Loan, Dr. Schneider did not know how much money NRNS needed to borrow but asked at that time that the loan be a long-term loan.

11. Mr. Ross stated that the TI Loan would be written for a one-year term during which the tenant improvements were constructed.

12. Mr. Ross stated that at maturity, the TI Loan would be converted to a long-term loan (the "Conversion Promise").

13. Mr. Ross is the only representative of Wells Fargo who allegedly made a Conversion Promise.

14. It was not uncommon to convert a loan like the TI Loan to a long-term loan once construction was complete.

15. At the time the TI Note was signed, Wells Fargo believed that doing so was one of the repayment options when the TI Loan matured.

16. In May of 2011, Dr. Schneider advised Wells Fargo that NRNS needed as much as $850,000.00 for the TI Loan.

17. Wells Fargo then approved the TI Loan for that amount.

18. The records of Wells Fargo indicate the TI Loan would be paid at its maturity from several possible sources: i) restructured into a term loan, ii) conversions of NRNS's accounts receivable to cash, or iii) by the guarantors of the TI Loan.

19. NRNS signed a promissory note dated May 23, 2011 ("TI Note").

20. The TI Note does not contain a provision expressly requiring conversion of the TI Loan to a long-term loan at the stated maturity date.

21. Wells Fargo made loan advances on the TI Loan as funds were needed to construct tenant improvements.

22. In the spring of 2012, Dr. Schneider was subjected to negative publicity in regional newspapers.

23. Wells Fargo made loan advancements under the TI Loan to NRNS in the total amount of $559,486.96.

24. No principal payments have been made on the TI Loan.

25. Wells Fargo did not convert the TI Loan to a long-term loan.

DISPUTED FACTS

Defendants assert that the following material facts are in dispute, and accordingly, this case must proceed to a trier of fact.

1. With respect to the Conversion Promise, it is disputed as to when that promise was made. This is a material fact, as it is the position of Defendants that the Conversion Promise was made subsequent to finalizing the OMNI Project Loan. [ANSWER OF JOHN H. SCHNEIDER, MICHELLE SCHNEIDER, SCHNEIDER LIMITED PARTNERSHIP, JOHN SCHNEIDER REVOCABLE TRUST U/A/D NOVEMBER 20, 2007 AND SCHNEIDER MANAGEMENT, LLC TO WELLS FARGO BANK'S FIRST INTERROGATORIES ("Interrogatories"), Nos. 8, 18].

2. With respect to the Conversion Promise, it is disputed that there were insufficient terms for it to be enforceable and/or justifiably relied upon by the Defendants. [Interrogatories, Nos. 8, 18].

3. It is disputed as to whether Mr. Ross made the Conversion Promise merely as an intent to act in the future, or in the alternative, as a contemporaneous misrepresentation of fact, considering Mr. Ross's state of mind at the time, intended to induce action on the part of the Defendants.

4.  It is disputed as to whether Defendants' reliance on the promises made by Mr. Ross was reasonable under the circumstances, taking into account all circumstances of the dealings of the parties and the conduct of Wells Fargo.

5.  Whether the conduct of Wells Fargo, together with the course of dealings of the parties and all circumstances of the complex financial arrangements at issue, created a commonality of purpose which ultimately led to a breach of Wells Fargo's duty of good faith and fair dealing.

6.  The amount of damages suffered by NRNS, together with other appropriate relief to the various Defendants as prayed for in the Counterclaim and affirmative defenses, are in dispute.

## ARGUMENT

"[S]ummary judgment is proper only if the evidence, viewed in the light most favorable to the party opposing summary judgment, shows that there are no genuine issues as to any material fact, and that the moving party is entitled to judgment as a matter of law." *Meyer v. Gibson*, 17 F. App'x 821, 822 (10th Cir. 2001) (citing *Charter Canyon Treatment Ctr. v. Pool Co.,* 153 F.3d 1132, 1135 (10th Cir.1998)).

*A. There are genuine issues of material fact that preclude granting summary judgment with respect to Wells Fargo's Fraud in the Inducement.*

In a diversity case such as this, the federal court must apply the substantive laws of the state in which it sits. *Boyd Rosene and Assoc's, Inc. v. Kansas Mun. Gas Agency*, 123 F.3d 1351, 1352-53 (10th Cir. 1997); *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817 (1938). Under Wyoming law, the elements of a claim of fraud are as follows: "(1) the defendant made a false representation intended to induce action by the plaintiff; (2) the plaintiff reasonably believed the representation to be true; and (3) the plaintiff relied on the false representation and suffered damages." *Sundown, Inc. v. Pearson Real Estate Co., Inc.*, 8 P.3d 324, 330 (Wyo. 2000) (citing *Jurkovich v. Tomlinson,* 905 P.2d 409, 411 (Wyo.1995); *Lavoie v. Safecare Health Service, Inc.,* 840 P.2d 239, 252 (Wyo.1992); *Husman, Inc. v. Triton Coal Co.,* 809 P.2d 796, 799 (Wyo.1991). *See also Britton v. Bill Anselmi Pontiac-Buick-GMC, Inc.,* 786 P.2d 855, 860 (Wyo.1990); *Rocky Mountain Helicopters, Inc. v. Air Freight, Inc.,* 773 P.2d 911, 919 (Wyo.1989)).

With respect to the first element of fraud, the Wyoming Supreme Court has explained as follows:

> [A] promise constitutes a representation of the maker's present intention to perform, which representation is an assertion of a

fact—the maker's state of mind. If such promise is made with the intention of not performing, it is a misrepresentation of an existing fact and is generally held to be actionable.

. . . .

The general rule is that fraud ordinarily cannot be founded upon a representation which is promissory in nature. [Citations omitted.] This general rule, however, is subject to an exception to the effect that if the representation, although promissory in nature, is made with no intention of performing it or with a present intention not to perform, it may then serve as a foundation for an action in fraud; one of the justifications for the exception being that there does exist a misrepresentation of a present fact, that is, the intention of the promissor.

*Meyer v. Ludvik*, 680 P.2d 459, 463-64 (Wyo. 1984) (quoting *Johnson v. Soulis,* Wyo., 542 P.2d 867, 872 (1975) (citing *Bissett v. Ply-Gem Industries, Inc.,* 533 F.2d 142, 145 (5th Cir.1976)).

In *Meyer*, Ludvik was given assurances by a partnership that certain acts would be undertaken should Ludvik follow through with a real estate transaction. Ludvik entered into the real estate transaction, but the partnership failed to perform the actions it had promised. The *Meyer* court found that the jury in that case reasonably concluded that the partnership misrepresented a material fact; that material fact being its intention to follow through with the promise at the time it was made. *Id.*

In this case, Defendants have alleged that Wells Fargo, through its agent Mr. Ross, made certain assurances that Wells Fargo would take certain actions should NRNS secure financing through Wells Fargo. This is very analogous to what happened in *Meyer*. *Id.* Contrary to the representations made by Mr. Ross, Wells Fargo did not convert the TI Loan to a long-term loan prior to, or at the time of, maturity of the TI Note.

Wells Fargo correctly points out that there is a heightened burden of proof with respect to the fraud claim. The fact that Defendants are subjected to a higher hurdle in convincing the finder of fact that the elements of fraud exist has no relevancy to the issue of whether a material fact exists. It is not the Court's role to weigh the evidence in ruling on a motion for summary judgment—only the trier of fact can make that determination at trial.

Wells Fargo argues that efforts of NRNS to secure alternate financial arrangements somehow defeat the fraud claim asserted by Defendants. [Plaintiff's Brief, p. 20]. It is asserted that "[a] person who had been promised a 10 or 15 year term loan would not be seeking long-term loan terms that differ from those previously promised, especially when Dr. Schneider never referred at any time to any promise of a term loan with a longer amortization period." But Plaintiff fails to explain why this assertion, unsupported by any facts of record,

must be so. While that may be an argument used to persuade a trier of fact, it certainly may not be presumed in order to prevail on a motion for summary judgment. There could be myriad reasons why Dr. Schneider sought such financing at the time, even while having assurances the TI Loan would be converted should an alternate arrangement not be secured.

It is then argued that neither Mrs. Schneider nor her revocable trust can assert a fraud in the inducement counterclaim. [Plaintiff's Brief, pp. 20-21]. But if Wells Fargo's failure to perform on the Conversion Promise is founded on fraud, the same can be held an affirmative defense to Wells Fargo's right of enforcement of the TI Note. Wells Fargo would have no right to collect on a promissory note induced through fraud from Mrs. Schneider or her trust as guarantors.

Wells Fargo then argues that the fraud claim fails as Dr. Schneider cannot prove his reliance on the Conversion Promise was reasonable. [Plaintiff's Brief, p. 21]. This assertion appears to be premised on Wells Fargo's argument that "[a] fraud claim cannot be based on a promise which is unenforceable at the time it was made." And that argument, in turn, appears to be premised on the assertion that insufficient terms were specified in the Conversion Promise. But to arrive at that point, Wells Fargo is taking the deposition testimony of Dr.

Schneider out of context and ignoring other evidence made available through discovery.

Wells Fargo erroneously argues, repeatedly throughout its brief, that the "Dr. Schneider testified that discussions involving converting the TI Loan to a long-term loan took place in late 2009 or early 2010," and that "[n]o further conversations about converting the TI Loan to a long-term loan ever occurred." [Plaintiff's Brief, pp. 19-20]. This is a mistatement of the deposition and the other evidence of record. In his deposition, Dr. Schneider was asked to recall when the TI Loan was first discussed with Wells Fargo. Dr. Schneider responded as follows:

> So sometime after the signature for the overall project [referring to the OMNI Project] occurred and the completion of an individual suite, the tenant improvement—the tenant improvement requirement was discussed, and since I did not have the capital to pay for that, I discussed with Wells Fargo the need for tenant improvement loan. And that would have been—***I believe it was perhaps*** late 2009, maybe early 2010. (emphasis added). [Dr. Schneider Depo, 16:15-22].

Dr. Schneider clearly indicated that at that moment of inquisition, he was unsure of the timeframe in question. But he did clearly indicate that it was after the OMNI Project loan was signed. And as revealed by the materials submitted with Wells Fargo's motion, that occurred on October 28, 2010. This is further explained by Dr. Schneider's answer to interrogatories where he indicated that

"Mr. Ross made [the Conversion Promise] at least 6 times during the 2010-2011 construction process." [Interrogatories, No. 8]. And as further explained in his answer to interrogatories, "Mr. Ross represented that Dr. Schneider's TI loan would be treated identical to the OMNI center loan, requiring him to sign construction loan with promise to convert to long term loan, *identical to the OMNI loan structure.*" (emphasis added) [Interrogatories, No. 18].

When the Conversion Promise was made, the OMNI Loan was in place. And the Conversion Promise assured Dr. Schneider that the TI Loan would be treated identical to the OMNI Loan—thus supplying the terms that Wells Fargo repeatedly throughout its brief asserts to be missing.

Wells Fargo then argues that "Defendants cannot prove that at the time Mr. Ross allegedly made the Conversion Promise Wells Fargo did not intend to do so." [Plaintiff's Brief, p. 22]. This argument is based upon language contained in the Credit Approval Presentation that "NRNS may choose to restructure the line of credit into a term loan facilitated by the Private Bank." But this lends little evidence of, let alone conclusively establish, Mr. Ross's state of mind when the Conversion Promise was made at an earlier time. *Meyer*, 680 P.2d 463-64.

To the contrary, Mr. Ross testified in his deposition that he had no authority to approve the loan at the time of the Conversion Promise—or at any other time,

for that matter. [Deposition of Glenn Ross, 21:2-23]. Thus, this is not the situation where a promisor honestly makes a promise, but then changes his mind. Rather, this is a situation where a promise was made while the promisor knew he had no authority or other basis for making that promise—i.e., it was a knowing misrepresentation. So to the extent Defendants prove the Conversion Promise was made by Mr. Ross, a reasonable conclusion to be drawn by the trier of fact would be that the Conversion Promise was made with the sole intention of inducing action on behalf of Dr. Schneider and NRNS. And it did induce that action.

Lastly, with respect to the fraud claim, Wells Fargo argues that NRNS cannot prove damages, and that accordingly, there can be no recovery. In support of this argument, Wells Fargo explains that the calculation of damages supplied by NRNS failed to deduct costs and expenses that NRNS saved by terminating employees. Further, at his deposition, Dr. Schneider was unable to state the amount of costs and expenses that were thus save. It can be expected that Wells Fargo would make this argument at trial, and to the extent NRNS is unable to produce an adequately persuasive response, it might be a winning argument. But that is for the trier of fact to determine. Contrary to the assertion of Wells Fargo, just because Dr. Schneider was unable to recite those costs at his

deposition does not mean that "lost profits cannot be determined and no damages evidence can be introduced . . ." [Plaintiff's Brief, p. 24]. And the question as to whether the lost profits are ultimately proved within a reasonable degree of certainty is, again, a question of fact to be weighed by the finder of fact.

For the foregoing reasons, Wells Fargo's motion for summary judgment with respect to the fraud claim should be denied.


B.  *There are genuine issues of material fact with respect to Wells Fargo's Breach of Implied Covenant of Good Faith and Fair Dealing.*

"Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *Scherer Const., LLC v. Hedquist Const., Inc.*, 18 P.3d 645, 653 (Wyo. 2001) (quoting Restatement (Second) of Contracts, § 205 (1981)).

> Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with the justified expectations of the other party; it excludes a variety of types of conduct characterized as involving "bad faith" because they violate community standards of decency, fairness or reasonableness. The appropriate remedy for a breach of the duty of good faith also varies with the circumstances.

*Id.* (quoting Restatement (Second) of Contracts, § 205, comment a. (1981)).

"Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be overt or may consist of inaction, and fair dealing may require more than honesty." *Id.* (quoting Restatement (Second) of Contracts, § 205, comment d. (1981)). "Compliance with the obligation to perform a contract in good faith requires that a party's actions be consistent with the agreed common purpose and justified expectations of the other party." *Id.* (citing *Andalex Resources, Inc. v. Myers,* 871 P.2d 1041, 1047 (Utah App.1994)).

In this case, Mr. Ross told Dr. Schneider that the TI Loan would be converted to a long-term loan. [Dr. Schneider Depo, 23:13-15]. This fact remains uncontroverted by Plaintiff—indeed, the affidavit submitted by Mr. Ross, together with the other factual materials on record, might indicate that this is indeed the case. Not only is the record devoid of any denial of that statement by Mr. Ross, or any other person, but the Wells Fargo argues that conversion was expressly contemplated. [Plaintiff's Brief, pp. 22-23]. Moreover, at no point in time until shortly prior to maturity of the TI Loan was any Defendant informed of Wells Fargo's newly informed intent not to convert the TI Loan. [Ross Aff., ¶22].

Accordingly, in considering the overall transaction, a trier of fact could reasonably conclude there was an "agreed common purpose;" i.e., that the TI Loan would be converted to a long-term loan on a reasonably commercial basis. Restatement (Second) of Contracts, § 205, comment a. (1981). And the trier of fact could further conclude that NRNS had "justified expectations" that Wells Fargo would follow through with that agreed common purpose, and that Wells Fargo did not do so. *Id.*

Wells Fargo argues that any reliance by NRNS and the other Defendants was not justified. That argument appears to be founded on the proposition that this claim for relief "seeks to impose duties contrary to the express terms of the TI Note and because no contract for a long-term loan exists." [Plaintiff's Brief, p. 27]. For this proposition, Wells Fargo cites *Scherer Const.*, *supra*. But as the Wyoming Supreme Court stated in that case, "[t]he purpose, intentions, and expectations of the parties should be determined by considering the contract language ***and*** the course of dealings between and conduct of the parties." *Id.* (quoting *Andalex Resources, Inc.,* 871 P.2d at 1047-48 (quoting *St. Benedict's Dev. v. St. Benedict's Hospital,* 811 P.2d 194, 200 (Utah 1991) (emphasis in original))). "The implied obligation 'must arise from the language used ***or*** it must be indispensable to effectuate the intention of the parties.' " *Garrett v.*

*BankWest, Inc.,* 459 N.W.2d 833 at 841 (S.D.1990) (quoting *Sessions, Inc. v.*

*Morton,* 491 F.2d 854, 857 (9th Cir.1974)) (emphasis added). *Id,* at 653.

   In other words, we are not confined to the express terms of the TI Note—or

any other writing. "The course of dealings between and conduct of the parties" is

a question of fact that must be considered by a trier of fact to accurately

determine the "purpose, intentions, and expectations" of the Plaintiff and the

Defendants in the context of the overall commercial transaction at issue. *Id.* It is

the position of the Defendants that the intention of the parties with respect to

the transaction was to convert the TI Loan consistent with the Conversion

Promise. If Defendants succeed in persuading the trier of fact that such is the

case, it necessarily follows that conversion of the TI Loan would "be

indispensible to effectuate the intention of the parties." *Id.*

   Accordingly, and contrarily to the assertion of Wells Fargo, the Defendants

do not attempt to "create new, independent rights or duties beyond those to

which the parties agreed in the TI Note and Guarantys." [Plaintiff's Brief, p. 27].

Rather, Defendants, intend to persuade the trier of fact that the conduct of the

parties and their course of dealings resulted in a commonality of purpose and

intent which was understood and agreed upon by both Wells Fargo and NRNS.

This common purpose and intent was discarded by Wells Fargo based upon the

unjustified hunches of Mr. Ross with respect to the credit worthiness of NRNS based on newspaper articles. No attempt was made by Wells Fargo to determine whether it would be justified in discarding the agreed-upon transaction on that basis.

There are disputed questions of material fact with respect to Defendants' claim for relief based on a breach of the implied covenant of good faith and fair dealing. Accordingly, Wells Fargo's motion for summary judgment should be denied.

*C.  There are genuine issues of material fact that preclude granting summary judgment with respect to Promissory Estoppel.*

In order to establish promissory estoppel, Defendants must show: "1) a clear and definite agreement; 2) proof that the party urging the doctrine acted to its detriment in reasonable reliance on the agreement; and 3) a finding that the equities support enforcement of the agreement." *Hulse v. First Interstate Bank of Commerce-Gillette*, 994 P.2d 957, 959 (Wyo. 2000) (quoting *Del Rossi v. Doenz*, 912 P.2d 1116, 1119 (Wyo.1996)).

Wells Fargo attempts to defeat this claim on summary judgment by asserting that the terms of the agreement were too indefinite. But, as explained

above, the Conversion Promise was understood to assure Dr. Schneider and NRNS that the TI Loan would be "treated identical to the OMNI center loan," which was in place at the time the assurance was made. [Interrogatories, No. 18]. Moreover, "Mr. Ross reminded Dr. Schneider that the accounts receivables were committed as the 'only security you will need to keep the TI loan in place . . .'" [Interrogatories, No. 8]. Accordingly, the rule relied upon by Wells Fargo from *Hulse* is inapplicable here.

The record supports the finding that the Defendants relied upon Mr. Ross's promises. This resulted in a legal detriment when NRNS executed the TI Note in reliance on those promises, and when the other Defendants executed the guarantys. This claim should proceed to the trier of fact to determine whether equity supports enforcement of Wells Fargo's promise.

*D. There are genuine issues of material fact that preclude granting summary judgment with respect to Equitable Estoppel.*

"Equitable estoppel is the effect of the voluntary conduct of a party whereby he is absolutely precluded from asserting rights which might otherwise have existed as against another person who has in good faith relied upon such conduct and has been led thereby to change his position for the worse." *Snake*

*River Brewing Co., Inc. v. Town of Jackson,* 39 P.3d 397, 407-08 (Wyo. 2002) (*quoting State Farm Mut. Auto. Ins. Co. v. Petsch,* 261 F.2d 331, 335 (10th Cir. 1958)). "Equitable estoppel arises only when a party, by acts, conduct, or acquiescence causes another to change his position." *Roth v. First Sec. Bank of Rock Springs, Wyo.,* 684 P.2d 93, 96 (Wyo.1984). It is asserted here that the Defendants, in good faith, relied upon the conduct and statements of Wells Fargo, and in doing so, they changed their position for the worse.

Wells Fargo's reliance on *Birt* is misplaced. In *Birt*, it can be fairly said that the subsequent failure to obtain financing was due to the prospective borrower's financial difficulties and poor credit worthiness. *Birt*, 75 P.3d at 655. While Wells Fargo tries to cast the same blame here, the sole justification appearing on the record is that there were newspaper articles apparently disparaging Dr. Schneider. Wells Fargo has produced no evidence, other than Mr. Ross's unsubstantiated hunches, that NRNS was incapable of performing under the Conversion Promise at the time Wells Fargo refuse to convert the TI Loan.

*E.  There are genuine issues of material fact that preclude granting summary*

*judgment with respect to Negligent Misrepresentation.*

The Wyoming Supreme Court has summarized the tort of negligent

misrepresentation as follows:

> "One who, in the course of his business, profession or employment,
> or in any other transaction in which he has a pecuniary interest,
> supplies false information for the guidance of others in their
> business transactions, is subject to liability for pecuniary loss
> caused to them by their justifiable reliance upon the information, if
> he fails to exercise reasonable care or competence in obtaining or
> communicating the information."

*Birt v. Wells Fargo Home Mortgage, Inc.*, 75 P.3d 640, 656 (Wyo. 2003) (quoting

*Hulse v. First American Title Company of Crook County,* 2001 WY 95, ¶ 52, 33

P.3d 122, ¶ 52 (Wyo.2001) (quoting *Richey v. Patrick,* 904 P.2d 798, 802

(Wyo.1995))).

Wells Fargo, through its agent Glenn Ross, supplied false information to Dr.

Schneider. It is undisputed that the relationship between Wells Fargo and the

Defendants was pursuant to Wells Fargo's course of business and that Wells

Fargo had a pecuniary interest in the transactions with NRNS.

Wells Fargo argues that this claim for relief fails as a matter of law because

"[t]he tort of negligent misrepresentation applies only to a misrepresentation of

fact. It does not apply when the misrepresentation is of future intention."

[Plaintiff's Brief, p. 30]. But this argument fails for the same reason as explained above with respect to fraud in the inducement. When Mr. Ross made the Conversion Promise, he was not merely making a statement as to Wells Fargo's future intention with respect to conversion. Rather, he was making a statement of present fact—in essence that the TI Note, should NRNS agree to execute it, was pre-approved for conversion in accordance with the Conversion Promise.

As it turns out, this was a misrepresentation, as Mr. Ross had no authority to pre-approve the conversion. But Dr. Schneider had no reason to know that, and consistent with the level of trust that he placed in Mr. Ross, he relied upon that misrepresentation when NRNS proceeded to execute the TI Loan which ultimately was not converted.

Accordingly, Wells Fargo's motion for summary judgment with respect to negligent misrepresentation should be denied.


*F. There are genuine issues of material fact that preclude granting summary judgment with respect to the claims for relief in Wells Fargo's Complaint.*

The FIRST AMENDED ANSWER TO THE COMPLAINT filed by Defendants asserts both estoppel and fraud as affirmative defenses. The same disputed facts set forth above with respect to the correlative claims for relief asserted in the

Counterclaim are applicable to those affirmative defenses. Accordingly, Wells Fargo's motion for summary judgment on its claims should be denied, and the matter should proceed to a trier of fact to determine whether Wells Fargo's enforcement of the TI Note and guarantys should be barred by estoppel and/or fraud.

## CONCLUSION

WELLS FARGO'S MOTION FOR SUMMARY JUDGMENT should be denied, with the exception of Defendants' claim for relief for enforcement of an oral contract. Genuine issues of material fact exist with respect to both the affirmative defenses of fraud and estoppel as well as the counterclaims other than oral contract.

**DATED** this 28th day of October 2013.

**WORRALL & GREEAR, P.C.**

By:_____/s/_____
       Michael D. Greear, WSB #6-2776
       P.O. Box 552
       Worland, WY  82401
       Voice: (307) 347-9801
       Fax: (307) 347-2859
       mgreear@rtconnect.net

By:_____/s/_____
    David M. Clark, WSB #6-4133
    P.O. Box 552
    Worland, WY  82401
    Voice: (307) 347-9801
    Fax: (307) 347-2859
    dc@rtconnect.net

    Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of October, 2013, I filed the foregoing electronically through the CM/ECF system or by mailing a true and correct copy by United States mail, postage prepaid and addressed as follows:

James R. Belcher
Belcher & Boomgaarden LLP
237 Storey Boulevard, Ste. 110
Cheyenne, WY 82009

_____
David M. Clark, Wyo. Bar #6-4133