FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2014 JAN 22  AM 11 24

STEPHAN HARRIS, CLERK
CHEYENNE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

---

WELLS FARGO BANK N.A.,

Plaintiff,

v.

NORTHERN ROCKIES NEURO-SPINE,
P.C., a Wyoming corporation; JOHN H.
SCHNEIDER; MICHELLE SCHNEIDER;
SCHNEIDER LIMITED PARTNERSHIP, a
Wyoming limited partnership; JOHN
SCHNEIDER REVOCABLE TRUST
U/A/D NOVEMBER 20, 2007; MICHELLE
SCHNEIDER REVOCABLE TRUST
U/A/D NOVEMBER 20, 2007; and
SCHNEIDER MANAGEMENT, LLC, a
Wyoming limited liability company,

Defendants.

Case No. 2:12–CV–00221–ABJ

---

## OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

---

Defendant corporation executed a promissory note with Plaintiff bank to secure financing

for tenant improvements in a proposed medical complex.  Bank lent several advances on the loan

totaling around $560,000, but the corporation did not pay the note when it came due.  Defendants

have argued affirmative defenses of estoppel and fraud and counterclaims of breach of oral

contract, breach of the implied duty of good faith and fair dealing, promissory estoppel, equitable estoppel, negligent misrepresentation, and fraud in the inducement. Defendant corporation and its guarantors allege that Plaintiff's employee promised that the short-term note would be converted to a long-term, low-interest loan before the note itself became due. Plaintiff bank has moved for summary judgment as to its claims for damages and all of the defendants' counterclaims. For the following reasons, Plaintiff's motion for summary judgment is **GRANTED.**

## BACKGROUND

In early 2009, several doctors began discussing the potential for creating a multi-discipline medical complex in Billings, Montana. To that end, several investors, including Defendant Dr. John H. Schneider ("Dr. Schneider"), created and financed ONI Realty Investors, LLC ("ONI Realty"). [ECF No. 33-7 at 11]. ONI Realty, based on some initial planning that had already been conducted, then proceeded to develop the medical complex, which was named the OMNI Project ("OMNI Project"). To finance the project's construction, ONI Realty took out a loan, the OMNI Loan ("OMNI Loan"), from Plaintiff Wells Fargo Bank, N.A. ("Wells Fargo").

Defendant Northern Rockies Neuro-Spine, P.C. ("NRNS"), was a planned, and later actual, tenant in the OMNI Project. [*Id.* at 14-16]. Defendant Dr. Schneider is the sole owner of NRNS. [*Id.* at 8]. As part of the OMNI Project, ONI Realty was going to build the building and install a base-level finish to each office suite in the project. It was then up to the individual tenant to finance any improvements to its office space. [*Id.* at 15-16]. To that end, NRNS procured the TI Loan ("TI Loan"), which presumably stands for "tenant improvement," from

2

Wells Fargo. [*Id.* at 16]. The TI Loan, and the TI Note ("TI Note") which evidences that debt, is the subject of the immediate action.

On May 23, 2011, Wells Fargo and Defendant NRNS executed the TI Note for the amount of $850,000 "or so much as may be outstanding." [ECF No. 33-2 at 11]. As part of that transaction, Defendants Michelle Schneider ("Mrs. Schneider"), Michelle Schneider Revocable Trust U/A/D November 20, 2007, Dr. Schneider, John Schneider Revocable Trust U/A/D November 20, 2007, Schneider Limited Partnership, and Schneider Management, LLC (collectively "Guarantors") all executed Commercial Guarantees to guarantee NRNS's payment of the TI Note. [ECF No. 33-2 at 1-10; ECF No. 33-3 at 1-10; ECF No. 1 at 23-27, 38-42].

Mr. Glenn Ross ("Mr. Ross") was and is the Business Banking Manager and Market President of Wells Fargo's branch in Cody, Wyoming. During the events leading up to the current dispute, Mr. Ross was Dr. Schneider's primary contact at the Wells Fargo branch in Cody for Dr. Schneider's business banking needs relating to the OMNI Project and the TI Note. [ECF No. 33-7 at 5, 10-11]. Prior to executing the TI Note and Guarantees, Mr. Ross and Dr. Schneider had several discussions regarding how to finance NRNS's tenant improvements in the OMNI Project. [*Id.* at 15-27]. Dr. Schneider alleges that, prior to executing the TI Note, Mr. Ross promised that Wells Fargo would convert the TI Loan to a long-term, low-interest loan within the TI Note's term. This Conversion Promise ("Conversion Promise") presents the central dispute of this case.

In their First Amended Answer, ECF No. 16-1, Defendants asserted that they should not be held liable under the TI Note and Guarantees due to the following affirmative defenses: failure of consideration, duress, estoppel, fraud, waiver, and laches. They also counterclaimed against Wells Fargo for damages for breach of contract, breach of the implied covenant of good

faith and fair dealing, promissory estoppel, equitable estoppel, negligent misrepresentation, and fraud in the inducement.

After the completion of discovery, Wells Fargo moved for summary judgment. [ECF No. 33]. In its brief in support of its motion for summary judgment, Wells Fargo argues that it is entitled to summary judgment on its claims for money judgment against Defendants and that all of Defendants' counterclaims lack legal merit. Defendants argue that a genuine dispute of material facts exists with respect to five of their counterclaims and the two correlated affirmative defenses apparently at issue: fraud and estoppel.

## STANDARD OF REVIEW

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is genuine if a reasonable juror could resolve the disputed fact in favor of either side. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is material if under the substantive law it is essential to the proper disposition of the claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor." *Anderson*, 477 U.S. at 255.

The party moving for summary judgment has the burden of establishing the nonexistence of a genuine dispute of material fact. *Lynch v. Barrett*, 703 F.3d 1153, 1158 (10th Cir. 2013). The moving party can satisfy this burden by either (1) offering affirmative evidence that negates an essential element of the nonmoving party's claim, or (2) demonstrating that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim. *See* Fed. R. Civ. P. 56(c)(1)(A)–(B).

4

Once the moving party satisfies this initial burden, the nonmoving party must support its contention that a genuine dispute of material fact exists either by (1) citing to particular materials in the record, or (2) showing that the materials cited by the moving party do not establish the absence of a genuine dispute. *See id.* The nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive a summary judgment motion, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Further, when opposing summary judgment, the nonmoving party cannot rest on allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine dispute of material fact for trial. *See Travis v. Park City Mun. Corp.*, 565 F.3d 1252, 1258 (10th Cir. 2009).

When considering a motion for summary judgment, the court's role is not to weigh the evidence and decide the truth of the matter, but rather to determine whether a genuine dispute of material fact exists for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact-finder, not the court. *Id.* at 255.

## DISCUSSION

In diversity cases, a federal court applies the choice-of-law rules of the state in which the federal court sits. *See Mem'l Hosp. of Laramie Cnty. v. Healthcare Realty Trust Inc.*, 509 F.3d 1225, 1229 (10th Cir.2007). Because this Court sits in Wyoming, the Court applies Wyoming's choice-of-law rules. *Id.* The parties both agree that Wyoming substantive law applies to both the tort and contractual claims in this matter. Thus, this Court will analyze Wyoming law with regards to the instant motion.

I.      **Wells Fargo's Claims for Money Judgment Against NRNS and Guarantors**

Plaintiff Wells Fargo has moved for summary judgment as to its claims for damages under the TI Note and the Commercial Guarantees. Defendants asserted several affirmative defenses which will be analyzed below, but they do not actually contest Wells Fargo's *prima facie* case.

The TI Note unambiguously states that NRNS "will pay this loan in one payment of all outstanding principal plus all accrued interest on June 15, 2012" and defines an event of default to include NRNS's failure to make a payment on its due date. [ECF No. 33-2 at 11]. The Commercial Guarantees all state that each Guarantor "absolutely and unconditionally guarantees full and punctual payment and satisfaction of the Indebtedness of [NRNS] to [Wells Fargo]." [*Id.* at 1, 6; ECF No. 33-3 at 1, 6].

The Court's inquiry into the parties' intent is limited to the four corners of the contract, and contract language is afforded the plain meaning given by a reasonable person. The interpretation of an unambiguous contract is a question of law for the Court. *See Speight, McCue & Associates, P.C. v. Wallop*, 153 P.3d 250, 254-55 (Wyo. 2007). Disputes relating to written loan instruments are appropriate matters for resolution via summary judgment. *See Martinez v. Assocs. Financial Svcs. Co.*, 891 P.2d 785, 788 (Wyo. 1995).

There is no dispute that Wells Fargo made loan advances totaling $559,486.96 to NRNS, the loan matured, and the unpaid balance was due and payable in full on June 15, 2012. [ECF No. 33-4 at 1; ECF No. 33-7 at 27]. Wells Fargo informed NRNS prior to Note maturity that payment was due in full. [ECF No. 33-4 at 30]. Wells Fargo has submitted the TI Loan advance and payment history on the TI Note and calculated the unpaid TI Loan balance to be $618,481.75 as of October 9, 2013, and interest accrues at the TI Note default interest rate of 8.50% ($132.10

per day) thereafter. [ECF No. 33-4 at 1; ECF No. 33-2 at 11]. Based on the unambiguous language in the TI Note and Commercial Guarantees, Wells Fargo is entitled to partial summary judgment on its *prima facie* claim for a money judgment against NRNS on the Note and against the Guarantors, jointly and severally, on the Commercial Guarantees. Thus, the Court must now analyze whether any of Defendants' affirmative defenses defeat Wells Fargo's *prima facie* case or raise a genuine issue of material fact that is appropriate for resolution via summary judgment.

## II.    Defendants' Affirmative Defenses and Counterclaims

Defendants' Answer asserts that they should not be held liable to Wells Fargo due to the following affirmative defenses: failure of consideration, duress, estoppel, fraud, waiver, and laches. Defendants also claim damages against Wells Fargo due to breach of an oral contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, equitable estoppel, negligent misrepresentation, and fraud in the inducement.

Wells Fargo moves for summary judgment as to its claim against the Defendants and as to Defendants' counterclaims arguing that they lack legal merit. The Court notes that Wells Fargo's motion for summary judgment does not mention any of Defendants' affirmative defenses. Defendants argue that Plaintiff's motion for summary judgment as to Wells Fargo's claims should be denied because of the affirmative defenses of estoppel and fraud. Defendants also argue that the motion should be denied as to each of the Defendants' counterclaims because there are genuine issues of material fact with regard to each. Each counterclaim and its correlated affirmative defense, if any, will be analyzed separately below. The Court notes that Defendants did not argue or discuss four of their initially asserted affirmative defenses: failure of consideration, duress, waiver, and laches. The Court, therefore, assumes that those affirmative defenses have been waived or conceded.

## A.   Breach of Oral Contract

Plaintiff argues that Wyoming's Statute of Frauds bars any evidence of an alleged oral contract for a ten to fifteen year loan repayment.   Defendants concede Plaintiff's motion as to this claim, Count One of their Counterclaim.   It is therefore **ORDERED** that partial summary judgment be entered in favor of the Plaintiff as to Count One of Defendants' Counterclaim.

## B.   Breach of Implied Covenant of Good Faith and Fair Dealing

The Defendants' counterclaim alleges that there was a common purpose of converting the TI Loan to a long-term loan. [ECF No. 16-1 at ¶ 39; ECF No. 35 at 17].   They further allege that Plaintiff breached the implied covenant of good faith and fair dealing by willfully interfering with that common purpose, rendering imperfect performance, and failing to cooperate with Defendants' performance under the TI Note and Loan. [ECF No. 16-1 at ¶¶ 40-42].   Plaintiff moves for summary judgment on this counterclaim by arguing that the counterclaim lacks legal merit.

> The implied covenant of good faith and fair dealing requires that neither party commit an act that would injure the rights of the other party to receive the benefit of their agreement.  Compliance with the obligation to perform a contract in good faith requires that a party's actions be consistent with the agreed common purpose and justified expectations of the other party.  A breach of the covenant of good faith and fair dealing occurs when a party interferes or fails to cooperate in the other party's performance.   The purpose, intentions, and expectations of the parties should be determined by considering the contract language and the course of dealings between and conduct of the parties.  The covenant of good faith and fair dealing may not, however, be construed to establish new, independent rights or duties not agreed upon by the parties.  In other words, the concept of good faith and fair dealing is not a limitless one.  The implied obligation must arise from the language used or it must be indispensable to effectuate the intention of the parties. In the absence of evidence of self-dealing or breach of community standards of decency, fairness or reasonableness, the exercise of contractual rights alone will not be considered a breach of the covenant.  Whether there has been a breach of the covenant of good faith and fair dealing is a factual inquiry that focuses on the contract and what the parties agreed to.

*Scherer Const., LLC v. Hedquist Const., Inc.*, 2001 WY 23, 18 P.3d 645, 653-54 (Wyo. 2001) (internal citations and quotations omitted).

The Court will begin by analyzing the contract language of the TI Note to determine the purpose, intentions, and expectations of the parties.   Specifically on point is the TI Note's Extension and Renewal clause.  Under that clause, Wells Fargo "*may*, at [its] discretion, renew or extend th[e] Note by written notice to [NRNS]."  [ECF No. 33-2 at 12] (emphasis added). Under this provision, Wells Fargo did not have a duty to convert the TI Note and Loan to a long-term loan.  Defendants allege that Wells Fargo "evaded the spirit of the bargain, and has rendered imperfect performance."  [ECF No. 16-1 at ¶ 41].  However, Defendants point to no evidence that shows that Wells Fargo did not pay the advances to NRNS when they were requested as per the TI Note; the uncontroverted evidence points to just the opposite.  [*See* ECF No. 33-7 at 27 ("Q: Did Wells Fargo make all the loan advances that were necessary, requested by NRNS to complete the tenant improvement?  A: Yes.")].

Defendants' argument, essentially, is that Wells Fargo breached the implied duty of good faith and fair dealing by not entering into a *new*, long-term loan with NRNS.  The process of entering into a new loan and agreeing to terms is, in effect, negotiation.   However, the Restatement (Second) of Contracts § 205 "does not deal with good faith in the formation of a contract."  *Id.* at cmt. c (1981).  Further, Mr. Ross's affidavit, the Credit Approval Presentation, and the email conversations between Mr. Ross and Dr. Schneider indicate that Wells Fargo *was* negotiating in good faith.  [*See* ECF No. 33-1; ECF No. 33-4 at 9-20].  The Defendants offer no evidence to the contrary, only bald assertions.  Neither do the Defendants offer any evidence of self-dealing or a breach of community standards of decency, fairness, or reasonableness.  *See Scherer Const., LLC*, 18 P.3d at 653-654.  Instead, the Court is left with Wells Fargo exercising

its contractual right of discretion as to whether to "renew or extend th[e] Note" or not. [ECF No. 33-2 at 12]. "[T]he exercise of contractual rights alone will not be considered a breach of the covenant." *Scherer Const., LLC*, 18 P.3d at 654.

The Court, therefore, finds that Defendants' counterclaim for breach of the implied duty of good faith and fair dealing fails as a matter of law. It, therefore, **GRANTS** Plaintiff's motion for partial summary judgment, and it **ORDERS** that partial summary judgment be entered in favor of the Plaintiff as to Count Two of the Defendants' First Amended Answer to Complaint.

### C.    Promissory Estoppel

The Defendants claim that Wells Fargo should be estopped from denying the alleged conversion promise. They allege that Wells Fargo made a clear and definite promise to convert the TI Loan to a long-term loan within the one-year term of the TI Note. Plaintiff, initially and rather unhelpfully, argued that Defendants' claim lacked legal merit because the alleged promise was not clear and definite as required by Wyoming case law. In its Reply brief, Plaintiff amended their argument to say that Defendants' promissory estoppel claim fails because promissory estoppel only applies if no contract exists.

> Promissory estoppel is a doctrine incorporated in the law of contracts. Its general theory is that, if an unambiguous promise is made in circumstances calculated to induce reliance, and it does so, the promisee if hurt as a result can recover damages. *Promissory estoppel applies, however, only if no contract exists.*

*Birt v. Wells Fargo Home Mortgage, Inc.*, 2003 WY 102, 75 P.3d 640, 651 (Wyo. 2003) (internal citations and quotations omitted) (emphasis added).

"Since promissory estoppel applies only if a contract does not exist, a promissory estoppel argument in this case, where the evidence demonstrates the existence of a contract, is incongruous." *Sowerwine v. Keith*, 997 P.2d 1018, 1021 (Wyo. 2000) (quoting *Frost Construction Company v. Lobo, Inc.*, 951 P.2d 390, 397 (Wyo.1998)). The contract at issue, the

TI Note, appears unambiguous, and Defendants do not argue that it is. The TI Note clearly grants Wells Fargo the discretion to renew or extend the Note; any renewal or extension is not mandatory. Defendants' counterclaim alleges that the conversion promise was made in April and May of 2011. [ECF No. 16-1 at ¶¶ 24, 25]. Dr. Schneider stated in his deposition that Mr. Ross made the conversion promise in "late 2009 or early 2010." [ECF No. 33-7 at 15, 21]. The TI Note was executed on May 23, 2011, after any alleged conversion promise. [ECF No. 33-2 at 11]. Defendants' counterclaim and affirmative defense thereby fails.

Therefore, Plaintiff's motion for partial summary judgment as to the Defendants' counterclaim and affirmative defense of promissory estoppel is **GRANTED.** It is hereby **ORDERED** that partial summary judgment be entered in Plaintiff's favor as to the Defendants' affirmative defense and counterclaim of promissory estoppel.

## D.   Equitable Estoppel

Defendants claim that Plaintiff should be equitably estopped from denying the alleged conversion promise. Plaintiff moves for partial summary judgment arguing that a written contract executed after an alleged promise prevails over any prior representations.

> [E]quitable estoppel is designed to combat not just actual fraud, but also constructive fraud, which consist[s] of all acts, omissions, and concealments involving breaches of a legal or equitable duty resulting in damage to another, and exists where such conduct, although not actually fraudulent, ought to be so treated when it has the same consequence and legal effects.

*Birt*, 75 P.3d at 655.

However, the terms of a written contract prevail over any prior representations by entity's agent. *See id.* ("the insurance policy dictated the terms of the parties' contract. In other words, once the written contract . . . was executed, its terms prevailed over prior representations of the agent.); *see also Verschoor v. Mountain W. Farm Bureau Mut. Ins. Co.*, 907 P.2d 1293, 1298 (Wyo. 1995) ("Estoppel and waiver will not operate to create additional coverage in an existing

contract of insurance."). Again, the Court is confronted with the terms of the TI Note contract. The TI Note was executed after the alleged conversion promise, and it clearly grants Wells Fargo discretion to renew or extend the Note. [*See* ECF No. 33-2 at 11-12].

Defendants' counterclaim and affirmative defense of equitable estoppel also thereby fails. Thus, the Court **GRANTS** Plaintiff's partial motion for summary judgment as to Defendants' counterclaim and affirmative defense of equitable estoppel. It is therefore **ORDERED** that partial summary judgment be entered in Plaintiff's favor as to the Defendants' affirmative defense and counterclaim of equitable estoppel.

### E.     Negligent Misrepresentation

Defendants' counterclaim alleges that Wells Fargo supplied false information to the Defendants in guidance of the Defendants' business transactions. Specifically, Defendants allege that "Wells Fargo informed Defendants that the TI Loan would be converted to a long term, low interest loan within [the TI Loan's] one-year term." [ECF No. 16-1 at ¶ 56]. Plaintiff moves for summary judgment as to this counterclaim arguing that the tort of negligent misrepresentation applies only to misrepresentations of present fact and that it does not apply to misrepresentations of future intention. Defendants, contrary to their counterclaim, argue Mr. Ross represented "in essence that the TI Note, should NRNS agree to execute it, was pre-approved for conversion." [ECF No. 35 at 23]. Defendants argue that that was a misrepresentation because Mr. Ross did not have the authority to pre-approve the conversion. *Id.*

A plaintiff claiming negligent misrepresentation in Wyoming must show:

One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if

12

he fails to exercise reasonable care or competence in obtaining or communicating the information.

*Birt*, 75 P.3d at 656; Restatement (Second) of Torts § 552(1) (1977).

In summarizing the district court's reasoning, the *Birt* court stated that the lower court was correct in holding "that negligent misrepresentation does not apply to misrepresentations of future intent or to statements of opinion." *Id.* at 657-658. "[T]he extension of negligent misrepresentation to situations involving future intentions would endow every breach of contract with a potential tort claim for negligent promise. The question of whether the alleged misrepresentation was one of present fact or of opinion or of future intention is a question of law." *Id.* at 658 (internal quotations omitted) (citing *Wilkinson v. Shoney's, Inc.*, 4 P.3d 1149, 1167 (2000) and *Bittel v. Farm Credit Services of Cent. Kansas*, 962 P.2d 491, 500-01 (1998)).

Mr. Ross's alleged statements were either representations of future intent or representations of his present intent to convert the TI Loan in the future. As to an alleged negligent misrepresentation of future intent, Defendants' counterclaims fails. Defendants' counterclaim and Dr. Schneider's deposition both consistently state that Wells Fargo represented that it "would" convert the TI Loan. [ECF No. 16-1 at ¶ 56; ECF No. 33-7 at 21, 22, 26]. Mr. Ross similarly stated that he thought that "the TI Loan *would* be converted" to a long term loan. [ECF No. 33-1 at ¶ 14 (emphasis added)]. These alleged statements are all of a future intent to perform an agreement. As the Supreme Court of Kansas stated in *Wilkinson*, "[t]he tort of negligent misrepresentation as set forth in Restatement (Second) of Torts § 552 (1976) does not, by its terms, apply to misrepresentation of an intention to perform an agreement." *Wilkinson*, 4 P.3d at 1165; *see Bittel*, 962 P.2d at 493.

Instead, "[t]o be actionable the statement of the maker's own intention must be fraudulent, which is to say that he must in fact not have the intention stated." Rest. (2d) of Torts

§ 530(1), cmt b. Thus, Defendants' allegation that Mr. Ross negligently misrepresented Wells

Fargo's intent to convert the TI Loan is not actionable. Defendants, in alleging that Mr. Ross

misrepresented his intent, must seek their remedy in fraud. Plaintiff's motion for summary

judgment as to Count Five of Defendants' counterclaim is therefore **GRANTED**, and the Court

**ORDERS** that partial summary judgment be entered in Plaintiff's favor.

### F.    Fraud in the Inducement

Defendants' counterclaim alleges that Wells Fargo made false statements to the

Defendants that were meant to induce the "Defendants to engage in various transactions with

Wells Fargo." [ECF No. 16-1 at ¶¶ 61, 62]. The Plaintiff claims that Defendants' fraud in the

inducement counterclaim lacks legal merit and is ripe for summary judgment. Defendants argue

that genuine issues of material fact exist, which precludes summary judgment.

> Fraud is established when a plaintiff demonstrates, by clear and convincing
> evidence, that 1) the defendant made a false representation intended to induce
> action by the plaintiff; 2) the plaintiff reasonably believed the representation to be
> true; and 3) the plaintiff relied on the false representation and suffered damages.
> When a party who is asserting a fraud claim is confronted with a motion for
> summary judgment, that party must present clear, unequivocal and convincing
> evidence to demonstrate that a genuine issue of material fact exists.

*Metz Beverage Co. v. Wyoming Beverages, Inc.*, 2002 WY 21, 39 P.3d 1051, 1059-60 (Wyo.

2002) (internal citations omitted).

The Court will begin by examining the first element of Defendants' fraud counterclaim.

Defendants' counterclaim alleges that Wells Fargo made a false representation "that the TI loan

would be converted to a long term, low interest loan within its one-year term." [ECF No. 16-1 at

¶ 61]. It specifically alleges that Mr. Ross, acting on Wells Fargo's behalf, made those false

statements in April and May of 2011 with the intent of inducing the Defendants to engage in

various transactions with Wells Fargo. [*Id.* at ¶ 62]. It also alleges that Wells Fargo made those

false promises with the intent to never perform them. [*Id.* at ¶ 63].

14

First, the Court finds that Mr. Ross at no point made any such representation to Mrs. Schneider. [ECF No. 33-8]. She asserts no evidence that she received such a representation, and all of the evidence presented supports that she did not receive such a representation. [*See* ECF No. 33-1, 33-7 at 18-26]. Thus, the Court will enter partial summary judgment against her as to her Fraud in the Inducement counterclaim. Since Mrs. Schneider appears to be the only trustee of the Michelle Schneider Revocable Trust, *see* ECF No. 33-2 at 10, it is likely that her trust also did not receive such a representation, but neither side argues the point with that level of specificity as to individual parties.

Generally, fraud cannot be founded upon a representation which is promissory in nature. *Johnson v. Soulis*, 542 P.2d 867, 872 (Wyo. 1975). However, there is an exception to that rule. The Wyoming Supreme Court has held that "a promise constitutes a representation of the maker's present intention to perform, which representation is an assertion of a fact—the maker's state of mind. If such promise is made with the intention of not performing, it is a misrepresentation of an existing fact" and is actionable in fraud. *Meyer v. Ludvik*, 680 P.2d 459, 463 (Wyo. 1984). However, "[t]he promissor's intention not to perform his promise cannot be established merely by proof of [his] non-performance." *Id.* at 464 (citing Restatement (Second) of Contracts § 171(2) cmt. b).

Assuming *arguendo* that Mr. Ross's statement was a "promise," the Defendants have produced no evidence to substantiate their claim that Wells Fargo did not intend to convert the TI Loan when the TI Loan initially closed. Mr. Ross "thought" that "the TI Loan would be converted from a short term construction loan to a long term loan after construction of [the] tenant improvements was complete." [ECF No. 33-1 at 4].

Moreover, the alleged promise must be viewed in context. *Metz Beverage Co.*, 39 P.3d at 1060. The Credit Approval Presentation for the TI Loan specifically indicates that the restructuring of the TI Loan "will likely be facilitated by the Private Bank." [ECF No. 33-4 at 11]. The emails exchanged between Mr. Ross and Dr. Schneider from September 2011 to May 2, 2012, support that Wells Fargo was trying to work with Dr. Schneider and NRNS to restructure the TI Loan or to take out a new loan with which the TI Loan would be repaid. [ECF No. 33-4 at 13-20]. Aside from Defendants' counsel's argument and the First Amended Answer, there is nothing to indicate that Wells Fargo did not actually intend to convert the TI Loan until a charge in circumstances occurred in May of 2012. [*See e.g.*, ECF No. 33-4 at 23-26]. As such, there is no evidence, much less clear, unequivocal, and convincing evidence, that Mr. Ross's statements were a *false* representation. Defendants' fraud affirmative defense and counterclaim thereby fails.

Therefore, the Court **GRANTS** Plaintiff's motion for summary judgment as to Defendants' fraud affirmative defense and counterclaim, and it hereby **ORDERS** that partial summary judgment be entered in Wells Fargo's favor as to all Defendants' fraud affirmative defense and counterclaim.

## CONCLUSION

The Plaintiff, Wells Fargo, has moved for summary judgment as to its claims for money damages against Defendant NRNS and its Guarantors, Defendants Michelle Schneider, Michelle Schneider Revocable Trust U/A/D November 20, 2007, Dr. John H. Schneider, and John Schneider Revocable Trust U/A/D November 20, 2007, Schneider Limited Partnership, and Schneider Management, LLC. Wells Fargo's *prima facie* showing was not truly disputed. Instead, Defendants initially asserted the following affirmative defenses: failure of consideration,

duress, estoppel, fraud, waiver, and laches.  Defendants also claimed damages against Wells

Fargo due to breach of an oral contract, breach of the implied covenant of good faith and fair

dealing, promissory estoppel, equitable estoppel, negligent misrepresentation, and fraud in the

inducement.  Defendants expressly conceded their counterclaim of breach of an oral contract.

Further, in arguing against Wells Fargo's claims for damages, Defendants did not discuss or

analyze the affirmative defenses of failure of consideration, duress, waiver, and laches, and the

Court has presumed that they have waived or conceded those defenses.

For the reasons stated above, the Court finds that Wells Fargo's motion for summary

judgment should be **GRANTED** as to its claims for money damages and all of the Defendants'

counterclaims and correlated affirmative defenses.  It is, therefore, **ORDERED** that summary

judgment be entered in Plaintiff Wells Fargo's favor as to its claims and all of Defendants'

asserted claims and defenses.

Dated this ___22ᵈ___ day of January, 2014.


_____
Alan B. Johnson
United States District Judge